**Hearing Date: July 16, 2013 at 10:00 a.m.**
**Objection Deadline: July 9, 2013 at 4:00 p.m.**

James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
Joshua A. Sussberg
KIRKLAND & ELLIS LLP
Citigroup Center
601 Lexington Avenue
New York, New York  10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Attorneys for the Reorganized Debtors

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| ION MEDIA NETWORKS, INC., *et al.*, | Case No. 09-13125 (JMP) |
| Reorganized Debtors. | Jointly Administered |
| ION MEDIA NETWORKS, INC., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 09-01440 (JMP) |
| CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., | |
| Defendant. | |
| CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 09-01479 (JMP) |
| ION MEDIA NETWORKS, INC., et al., | |
| Defendants. | |

**NOTICE TO REOPEN THE CHAPTER 11 CASES
FOR THE LIMITED PURPOSE OF CONSIDERING THE
REORGANIZED DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT
TO SECTION 363(b) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT
AGREEMENT WITH CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD.**

PLEASE TAKE NOTICE that, in accordance with the *Order Granting Final Decree Closing the Chapter 11 Cases* (the "***Final Decree Order***") [Docket No. 612], attached as **Exhibit C** to the Motion (as defined herein),[1] the Reorganized Debtors hereby request that these chapter 11 cases be reopened for the limited purpose of considering the *Reorganized Debtors' Motion for Entry of an Order Pursuant to Section 363(b) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement with Cyrus Select Opportunities Master Fund, Ltd.* (the "***Motion***").

PLEASE TAKE FURTHER NOTICE that, on **10:00 a.m. (EST) on July 16, 2013**, the above-captioned Reorganized Debtors, by their proposed counsel, shall appear before the Honorable James M. Peck, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004-1408, Room 601, or soon thereafter as counsel may be heard, and present the Motion.

PLEASE TAKE FURTHER NOTICE that you need not appear at the Hearing if you do not object to the relief requested in the Motion.

---

[1]     The Final Decree Order, in relevant part, provides:

"Upon the filing of a notice with the Court by either Cyrus or the Reorganized Debtors no later than sixty (60) days after the conclusion of the Cyrus Appeal (including any subsequent appeals) (the "***Notice to Reopen***"), the Chapter 11 Cases shall be reopened, and "cause" as used in section 350(b) of the Bankruptcy Code shall be deemed to exist."

K&E 26474569

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

PLEASE TAKE FURTHER NOTICE that, objections, if any, to the Motion must comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York, must be set forth in a writing describing the basis therefor and must be filed with the Court electronically in accordance with General Orders M-182 and M-193 by registered users of the Court's electronic case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website of the Bankruptcy Court) and, by all other parties in interest, on a 3 ½ inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-182 or by first-class mail upon each of the following: (a) counsel to the Reorganized Debtors, Kirkland & Ellis LLP, Citigroup Center, 601 Lexington Avenue, New York, New York, 10022-4611, Attn.: Jonathan S. Henes; (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn.: Susan Golden; (c) counsel to the ad hoc group of first lien secured lenders, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York, 10036, Attn.: Ira S. Dizengoff and Alexis Freeman and 1333 New Hampshire Avenue, N.W., Washington, D.C. 20036, Attn.: Joanna F. Newdeck; (d) counsel to the first priority trustee and collateral agent, Troutman Sanders LLP, 405 Lexington Avenue, New York, New York 10174, Attn.: Hollace T. Cohen; (e) counsel to the prepetition agent, Loeb & Loeb LLP, 345 Park Avenue, New York, New York, 10022, Attn.: Walter H. Curchack; (f)

counsel to the prepetition agent, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn.: Adam C. Harris and David J. Karp; (g) counsel to the minority first lien holder group, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn.: Mark I. Bane and Menachem M. Bensinger; (h) counsel to the agent for the Reorganized Debtors' postpetition debtor-in-possession financing facility, Nixon Peabody LLP, 437 Madison Avenue, New York, New York 10022, Attn.: Bart Pisella; (i) counsel to Cyrus Select Opportunities Master Fund, Ltd., White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036-2787, Attn: J. Christopher Shore and Julia Winters; (j) Ashok Nayyar; (k) Kevin Sisson; and (l) all other parties required to receive notice pursuant to the Order Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 30] so as to be received no later than **4:00 p.m. (EST) on July 9, 2013**.

New York, New York
Dated:  June 6, 2013

_/s/ Jonathan S. Henes_
James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
Joshua A. Sussberg
KIRKLAND & ELLIS LLP
Citigroup Center
601 Lexington Avenue
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Attorneys for the Reorganized Debtors

K&E 26474569

James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
Joshua A. Sussberg
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Attorneys for the Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ION MEDIA NETWORKS, INC., *et al*., | Case No. 09-13125 (JMP) |
| Reorganized Debtors. | Jointly Administered |
| ION MEDIA NETWORKS, INC., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 09-01440 (JMP) |
| CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., | |
| Defendant. | |
| CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 09-01479 (JMP) |
| ION MEDIA NETWORKS, INC., et al., | |
| Defendants. | |

## REORGANIZED DEBTORS' MOTION FOR ENTRY
## OF AN ORDER PURSUANT TO SECTION 363(b) OF
## THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL
## RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT
## AGREEMENT WITH CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD.

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

ION Media Networks, Inc. ("**ION**") and its reorganized debtor affiliates, as the

reorganized debtors (collectively, the "**Reorganized Debtors**," and before the Effective Date of

the Plan, the "**Debtors**"),[1] respectfully represent:

---

[1]    The Debtors in these chapter 11 cases were:  ION Media Networks, Inc.; America 51, L.P.; ION Media Akron License, Inc.; ION Media Albany License, Inc.; ION Media Atlanta License, Inc.; ION Media Battle Creek License, Inc.; ION Media Boston License, Inc.; ION Media Brunswick License, Inc.; ION Media Buffalo License, Inc.; ION Media Charleston License, Inc.; ION Media Chicago License, Inc.; ION Media Dallas License, Inc.; ION Media Denver License, Inc.; ION Media Des Moines License, Inc.; ION Media Entertainment, Inc.; ION Media Greensboro License, Inc.; ION Media Greenville License, Inc.; ION Media Hartford License, Inc.; ION Media Hawaii License, Inc.; ION Media Hits, Inc.; ION Media Holdings, Inc.; ION Media Houston License, Inc.; ION Media Indianapolis License, Inc.; ION Media Jacksonville License, Inc.; ION Media Kansas City License, Inc.; ION Media Knoxville License, Inc.; ION Media Lexington License, Inc.; ION Media License Company, LLC; ION Media Los Angeles License, Inc.; ION Media LPTV, Inc.; ION Media Management Company.; ION Media Martinsburg License, Inc.; ION Media Memphis License, Inc.; ION Media Milwaukee License, Inc.; ION Media Minneapolis License, Inc.; ION Media New Orleans License, Inc.; ION Media of Akron, Inc.; ION Media of Albany, Inc.; ION Media of Atlanta, Inc.; ION Media of Battle Creek, Inc.; ION Media of Birmingham, Inc.; ION Media of Boston, Inc.; ION Media of Brunswick, Inc.; ION Media of Buffalo, Inc.; ION Media of Cedar Rapids, Inc.; ION Media of Charleston, Inc.; ION Media of Chicago, Inc.; ION Media of Dallas, Inc.; ION Media of Denver, Inc.; ION Media of Des Moines, Inc.; ION Media of Detroit, Inc.; ION Media of Fayetteville, Inc.; ION Media of Greensboro, Inc.; ION Media of Greenville, Inc.; ION Media of Hartford, Inc.; ION Media of Honolulu, Inc.; ION Media of Houston, Inc.; ION Media of Indianapolis, Inc.; ION Media of Jacksonville, Inc.; ION Media of Kansas City, Inc.; ION Media of Knoxville, Inc.; ION Media of Lexington, Inc.; ION Media of Los Angeles, Inc.; ION Media of Louisville, Inc.; ION Media of Martinsburg, Inc.; ION Media of Memphis, Inc.; ION Media of Miami, Inc.; ION Media of Milwaukee, Inc.; ION Media of Minneapolis, Inc.; ION Media of Nashville, Inc.; ION Media of New Orleans, Inc.; ION Media of New York, Inc.; ION Media of Norfolk, Inc.; ION Media of Oklahoma City, Inc.; ION Media of Orlando, Inc.; ION Media of Philadelphia, Inc.; ION Media of Phoenix, Inc.; ION Media of Portland, Inc.; ION Media of Providence, Inc.; ION Media of Raleigh, Inc.; ION Media of Roanoke, Inc.; ION Media of Sacramento, Inc.; ION Media of Salt Lake City, Inc.; ION Media of San Antonio, Inc.; ION Media of San Jose, Inc.; ION Media of Scranton, Inc.; ION Media of Seattle, Inc.; ION Media of Spokane, Inc.; ION Media of Syracuse, Inc.; ION Media of Tampa, Inc.; ION Media of Tulsa, Inc.; ION Media of Washington, Inc.; ION Media of Wausau, Inc.; ION Media of West Palm Beach, Inc.; ION Media Oklahoma City License, Inc.; ION Media Orlando License, Inc.; ION Media Philadelphia License, Inc.; ION Media Portland License, Inc.; ION Media Publishing, Inc.; ION Media Raleigh License, Inc.; ION Media Sacramento License, Inc.; ION Media Salt Lake City License, Inc.; ION Media San Antonio License, Inc.; ION Media San Jose License, Inc.; ION Media Scranton License, Inc.; ION Media Songs, Inc.; ION Media Spokane License, Inc.; ION Media Syracuse License, Inc.; ION Media Television, Inc.; ION Media Tulsa License, Inc.; ION Media Washington License, Inc.; ION Media Wausau License, Inc.; ION Media West Palm Beach Holdings, Inc.; ION Media West Palm

(Continued…)

K&E 26474569

## Relief Requested

1.    By this motion (the "*Motion*"), ION seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to section 363(b) of the Bankruptcy Code and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), approving the Settlement Agreement and Release between ION and Cyrus Select Opportunities Master Fund, Ltd. ("*Cyrus*"), a signed copy of which is attached hereto as **Exhibit B** (the "*Settlement Agreement*").  In support of this motion, ION respectfully states as follows:

## Preliminary Statement

2.    On December 23, 2010, the United States Bankruptcy Court for the Southern District of New York entered an order closing ION's chapter 11 cases.  Today, almost two and one-half years later, ION has resolved the final remaining issue arising from its chapter 11 cases - the Cyrus appeal of the confirmation order.  After extensive good-faith negotiations, ION and Cyrus have agreed, subject to Court approval, to resolve all outstanding issues relating to  ION's reorganization, including the Adversary Proceedings (as defined below) and Cyrus's appeal of the Confirmation Order (as defined below), which currently is pending before the Second Circuit Court of Appeals.

---

Beach License, Inc.; ION Television Net, Inc.; Ocean State Television, L.L.C.; and Open Mobile Ventures Corporation.  The location of the corporate headquarters for all Debtors except ION Media of New York, Inc. is: 601 Clearwater Park Road, West Palm Beach, Florida  33401-6233.  The location of the corporate headquarters for ION Media of New York, Inc. and the service address for all of the Debtors is:  1330 Avenue of the Americas, New York, New York  10019.  Information regarding the Debtors' business and the background of these chapter 11 cases can be found in the Declaration of R. Brandon Burgess, Chairman, President and Chief Executive Officer of ION Media Networks, Inc., In Support Of First Day Pleadings (the "*First Day Declaration*"), filed on May 19, 2009, the date the Debtors filed their petitions (the "*Petition Date*") under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*").  On June 22, 2009, the United States Trustee for the Southern District of New York (the "*U.S. Trustee*") appointed a statutory committee of unsecured creditors (the "*Creditors' Committee*").

K&E 26474569

3.      Notably, the resolution of the outstanding issues with Cyrus will allow ION to close the book on its reorganization and allow ION to move forward unhindered by this outstanding litigation.  It provides finality to both ION and Cyrus in the form of (a) a mutual release of claims and (b) and a limited third-party injunction and release of claims arising from the dispute.  As further discussed below, the Court's approval of the terms contemplated by the Settlement Agreement is appropriate and beneficial to all parties involved and avoids the uncertainty and cost of further litigation.

## Background

4.      On December 30, 2005, Ion (f/k/a Paxson Communications Corporation) and certain of its affiliates issued $725 million in first priority secured debt (the "***First Priority Debt***"), and $405 million in second priority secured debt (the "***Second Priority Debt***," and together with the First Priority Debt, the "***Debt***").

5.      In connection with issuance of the Debt, ION entered into that certain Pledge and Security Agreement dated as of December 30, 2005, by and among ION and certain of its affiliates, Bank of New York Mellon Trust Company, N.A. as Indenture Trustee and Collateral Agent, and Citibank North America, Inc. as First Priority Administrative Agent (the "***Security Agreement***") pursuant to which, among other things, ION and its affiliates pledged certain collateral in support of the Debt.

6.      Wells Fargo Bank, National Association is the Successor Administrative Agent under the Security Agreement and related term loan agreement.  Appended as Annex 1 to the Security Agreement were those certain Collateral Agent and Secured Party Acknowledgements (the "***Intercreditor Agreement***"), which, among other things, appointed a collateral agent for the Debt and set forth various intercreditor covenants regarding the relative priorities of collateral pledged under the Security Agreement.

4

7.       On May 19, 2009, the Debtors commenced voluntary cases under chapter 11 of the United States Bankruptcy Code.

8.       Cyrus was a holder of Second Priority Debt.  Over the course of ION's chapter 11 cases, the Debtors asserted that the liens granted by the Security Agreement in favor of the debt holders on certain of the Debtors' FCC licenses and, to the extent not otherwise included, all proceeds of those licenses (the "*FCC Licenses Lien*") were valid.

9.       The validity of the FCC Licenses Lien was disputed in two related adversary proceedings.    Adv.    Proc.    Nos.    09-1440    and    09-1479    (JMP) (collectively the "*Adversary Proceedings*").  First, on August 19, 2009, ION filed a complaint asserting that Cyrus had violated the terms of the Intercreditor Agreement by challenging the validity of the FCC Licenses Lien (the "*ION Complaint*").  On September 19, 2009, Cyrus responded with a counterclaim (the "*Cyrus Counterclaim*") and also filed a separate complaint, asserting that the FCC Licenses Lien was not valid (the "*Cyrus Complaint*").  On October 13, 2009, Wells Fargo Bank National Association ("*Wells Fargo*") and the Bank of New York Mellon Trust Company ("*NY Mellon Trust*"), both parties to the Intercreditor Agreement, each filed an answer to the Cyrus Counterclaim and counterclaims against Cyrus.  On October 15, 2009, ION filed a motion for summary judgment (the "*Summary Judgment Motion*"), asking the Bankruptcy Court to, among other things, rule that Cyrus could not contest the validity of the FCC Licenses Lien.  Wells Fargo, NY Mellon Trust, the ad hoc first lien group (the "*First Lien Group*")[2] and the Unsecured Creditors' Committee joined ION's Summary Judgment Motion.

---

[2]    The First Lien Group included Avenue Capital Group, Black Diamond Capital Management, L.L.C., and Trilogy Capital.

K&E 26474569

10.    On August 19, 2009, the Debtors filed its joint plan of reorganization (the "*Plan*"), which, among other things, presumed the validity of the FCC Licenses Lien. Cyrus objected to confirmation of the Debtors' Plan based on, among other things, the presumed validity of the FCC Licenses Lien.

11.    On December 3, 2009, the Bankruptcy Court issued an Order Confirming the Debtors' Fourth Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "*Confirmation Order*"). On December 3, 2009, Cyrus noticed an appeal of the Confirmation Order to the United States District Court for the Southern District of New York (the "*District Court*") and filed a motion with the Bankruptcy Court seeking a stay pending the appeal. On December 4, 2009, the Bankruptcy Court denied Cyrus' motion for a stay pending the appeal. On December 7, 2009 Cyrus appealed the Bankruptcy Court's decision denying a stay in the District Court. The District Court denied Cyrus's appeal on December 14, 2009. Cyrus subsequently appealed the District Court decision on December 30, 2009. On appeal, the Second Circuit initially reversed the District Court decision and allowed the stay, but then, on ION's motion to reconsider, reversed itself and upheld the District Court decision and the stay, which allowed ION to consummate the Plan and emerge from Bankruptcy. The Bankruptcy Court entered the Order Granting Final Decree Closing the Chapter 11 Cases on December 23, 2010.

12.    With respect to the underlying appeal of the Confirmation Order, on October 10, 2012, the United States District Court for the Southern District of New York issued a Memorandum and Order affirming the Confirmation Order (the "*SDNY Judgment*"). On November 9, 2012, Cyrus noticed an appeal of the SDNY Judgment to the United States Court of Appeals for the Second Circuit (the "*Second Circuit Appeal*"), which is currently pending.

6

13.     To avoid the cost, inconvenience and distraction of further litigation, ION wishes to consensually resolve its disputes with Cyrus by entering into the Settlement Agreement.

**B.      The Settlement Agreement**

14.     ION and Cyrus have entered into the Settlement Agreement, dated June 6, 2013, a copy of which is attached hereto as **Exhibit B**.  The salient terms of the Settlement Agreement are as follows:[3]

- <u>Discontinuance of actions</u>: Within three (3) days of the date that an order granting the Motion, substantially in the form appended hereto as **Exhibit A**, becomes a final, non-appealable order, Cyrus and Ion shall jointly file a voluntary stipulation of dismissal of the Second Circuit Appeal with prejudice and with each party thereto to bear its own costs and fees pursuant to Federal Rule of Appellate Procedure 42.

- <u>Effective Date</u>: The Effective Date will be two (2) business days following the date on which the Court enters an order granting the Motion, substantially in the form appended hereto as **Exhibit A**.  If the Court denies the Motion, then the entire Settlement Agreement shall be null and void.

- <u>Mutual Releases</u>: Except for claims to enforce the terms of the Settlement Agreement, the parties (including each of the Reorganized Debtors) shall release and discharge each other from any and all liabilities, actions, claims, causes of action, lawsuits (including without limitation, the Lawsuit), debts, dues, sums of money, accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, promises, judgments and demands, whatsoever relating to the Security Agreement, Intercreditor Agreement, the Chapter 11 Proceedings, the Adversary Proceedings, the Confirmation Order or the FCC Licenses Lien, from the beginning of the world through and including the Effective Date (the "***Released Claims***").

- <u>Limited Third-Party Release and Injunction</u>: The terms of the Settlement Agreement also provide for a release and injunction against the commencement or continuation of any actions or proceedings, or the assertion of any claims, objections or allegations related to the Security Agreement, the Intercreditor Agreement, the Chapter 11 Proceedings, the Adversary

---

[3]   All capitalized terms used but not defined herein shall have the meanings provided to them in the Settlement Agreement.  The summary of the Settlement Agreement provided herein is qualified in its entirety by the Settlement Agreement.  In the case of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement shall govern.

7

Proceedings, the Confirmation Order or the FCC Licenses Lien by: (a) the Reorganized Debtors; (b) Cyrus; (c) Wells Fargo; (d) NY Mellon Trust; (e) each member of the First Lien Group; (f) Ashok Nayyar and Kevin Sisson; and (g) with respect to the entities in clauses (a) through (f), such entity's current and former agents, servants, officers, directors, shareholders, partners, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, and assigns.

- _Choice of Law_: The Settlement Agreement and the rights and obligations of the parties thereto shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York.

### Supporting Authority

**A.    Settlement**

15.    A court may authorize a debtor to enter into a settlement so long as such actions fall within the debtor's business judgment. _See_ 11 U.S.C. § 363(b)(1) "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate"); _In re Global Crossing Ltd._, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (stating that judicial approval of a debtor's use of estate property outside of the ordinary course of business pursuant to section 363 of the Bankruptcy Code requires a showing that there is a good business reason); _see also Official Comm. of Unsecured Creditors v. LTV Corp._ (_In re Chateaugay Corp._), 973 F.2d 141, 143 (2d Cir. 1992); _Comm. of Equity Sec. Holders v. Lionel Corp._ (_In re Lionel Corp._), 722 F.2d 1063, 1070 (2d Cir. 1983); _In re Ionosphere Clubs, Inc._, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

16.    The business judgment rule shields a debtor's management's decisions from judicial second-guessing. _See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp._ (_In re Johns-Manville Corp._), 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a [d]ebtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth). Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property out of

8

the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993)

17.     In addition, Bankruptcy Rule 9019(a) permits a bankruptcy court to approve a "compromise or settlement" after notice and a hearing.   FED. R. BANKR. P. 9019(a).   In determining whether to approve a settlement as fair and equitable under Bankruptcy Rule 9019, courts in the Second Circuit consider the following factors:   (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay; (c) the paramount interests of the creditors; (d) whether other parties in interest affirmatively support the proposed settlement; (e) the competency and experience of counsel supporting the settlement; (f) "the nature and breadth of releases to be obtained by officers and directors" and (f) the extent to which the settlement is the product of arm's length bargaining.   *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Group*, 960 F.2d at 292; *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993).

18.     A settlement under Bankruptcy Rule 9019 need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505.   In determining the range of reasonableness, the bankruptcy court need not decide the numerous issues of law and fact raised by the settlement.   *See Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)

9

(citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  In other words, the court does not

need to conduct a "mini-trial" of the underlying facts and merits; it needs only to evaluate those

facts that are necessary to allow it to assess the settlement and to make an independent judgment

about the settlement.  *See In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y.

2005).

19.   The decision to accept or reject a compromise or settlement is within the sound

discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 121-122 (S.D.N.Y. 1994);

*Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also Abeles v. Infotechnology (In re

Infotechnology)*, 1995 U.S. App. LEXIS 39883 at *4-5 (2d Cir. Nov. 9, 1995) (noting that in

determining whether to approve a debtor's motion to settle a controversy, a court does not

substitute its judgment for that of the debtor); *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46

(Bankr. S.D.N.Y. 1998).

20.   Additionally, a court may exercise its discretion "in light of the general public

policy favoring settlements."  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226 (Bankr.

S.D.N.Y. 2007) ("As a general matter, settlements or compromises are favored in bankruptcy

and, in fact, encouraged"); *see also In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr.

S.D.N.Y. 1998) ("The decision to grant or deny a settlement or compromise lies squarely within

the discretion of the bankruptcy court [and such] discretion should be exercised in light of the

general public policy favoring settlements.") (citing *Nellis v. Shugrue*, 165 B.R. 115, 121

(S.D.N.Y. 1994); *In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y.

1993) (noting the paramount public policy for settlements)).

21.   A settlement warrants approval when it will further a debtor's administration of

its chapter 11 case.  *See Iridium*, 478 F.3d at 455 ("In Chapter 11 bankruptcies, settlements [ ]

10

help clear a path for the efficient administration of the bankrupt estate, including any eventual plan of reorganization."); *In re 1031 Tax Group, LLC*, Case No. 07–11448, Adv. Pro. No. 07-1710, 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. Aug. 23, 2007) (settlements "minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate").

22.    Here, the Settlement Agreement is fair and equitable and the product of good faith negotiations.  ION, after consideration and deliberation, determined, in its sound business judgment, that entering into the Settlement Agreement with Cyrus is in its best interests. Notwithstanding ION's belief that it will be successful in the Second Circuit Appeal and that it could seek and obtain damages from Cyrus for its alleged violation of the Intercreditor Agreement, continued litigation, with its attendant costs and distractions, is not attractive to ION. In addition, no consideration will be paid to Cyrus under the Settlement Agreement.  Based on the foregoing, the Settlement Agreement should be approved.

**B.    Limited Third-Party Release and Injunction**

23.    Courts in this jurisdiction have approved third-party releases and injunctions in the context of a section 9019 settlement where the releases "are narrowly drawn and are necessary to prevent relitigation of precisely the claims that were negotiated and resolved by the Settlement Agreement."  *See e.g.*, *In re Delta Air Lines, Inc.*, 370 B.R. 537, 551 (Bankr. S.D.N.Y. 2007) aff'd, 374 B.R. 516 (S.D.N.Y. 2007) *aff'd sub nom. Ad Hoc Comm. of Kenton Cnty. Bondholders v. Delta Air Lines, Inc.*, 309 F. App'x 455 (2d Cir. 2009); *see also In re Calpine Corp.*, Case No. 05-60200 [Docket No. 5422] (Bankr. S.D.N.Y July 26, 2007) (approving settlement negotiated by the debtors and an ad hoc group of bondholders and their indenture trustee, which reduced principal and interest to be paid under bonds and contained no opt-out provision and enjoining litigation by affected bondholders against the ad hoc group of

11

bondholders and indenture trustee related to the settled claims); *In re UAL Corp.*, Case No. 02-48191 [Docket No. 12927] (Bankr. N.D. Ill. Sept. 25, 2005) (approving settlement agreement negotiated between debtors, indenture trustee, and certain members of a public debt group and enjoining litigation by any individual member of the public debt group against the debtors related to the settled claims).

24.      Here, the third-party release and injunction of claims against Cyrus is appropriate. The third-party release and injunction is narrow in scope and releases only those claims that are necessary to prevent further litigation with respect to the claims covered and resolved by the Settlement Agreement. Indeed, without the release and injunction, there would be no Settlement Agreement and ION would continue to incur legal expenses with respect to the Second Circuit Appeal.

25.      Moreover, as part of the Settlement Agreement, ION has provided notice to Wells Fargo, NY Mellon Trust, the members of the First Lien Group, as well as Messrs. Nayyar and Sisson, former affiliates of Cyrus.  These parties are aware of the District Court and Second Circuit Appeals but have never taken part in them for the past two and one-half years.  These parties are well informed as to the overall implications of the Settlement Agreement, including the release and injunction against claims stemming from the Adversary Proceedings and the Second Circuit Appeal, and have an opportunity to object to the Settlement Agreement.

26.      In light of the foregoing, ION believes that, in the exercise of its sound business judgment, the Settlement Agreement is in its best interests.  Accordingly, the Court should approve the Settlement Agreement pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

K&E 26474569

## Jurisdiction

27.     Pursuant to 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.), the Court has jurisdiction to consider and grant the relief requested herein.  A proceeding to consider and grant such relief is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Motion Practice

28.     This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion.  Accordingly, the Reorganized Debtors submit that this motion satisfies Rule 9013-1(a) of the Local Rules.

## Notice

29.     No trustee or examiner was appointed in these chapter 11 cases.  The Reorganized Debtors have provided notice of this motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to Cyrus; (c) counsel to the Committee; (d) counsel to the *ad hoc* group of first lien lenders; (e) counsel to the indenture trustees on the first and second priority senior secured notes; (f) counsel to the agent on the first priority term loan; (g) counsel to the *ad hoc* group of minority first lien lenders; (h) counsel to the counterparties to ION's floating to fixed interest rate swap agreements; (i) counsel to the agent for ION's postpetition debtor-in-possession financing facility (j)  the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the Federal Communications Commission; (m) the Office of the Attorney General in all of the states in which ION operates; (n) Ashok Nayyar; (o) Kevin Sisson; and (p) all other parties required to receive notice pursuant to the Order

13

Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 30].

ION respectfully submits that no other or further notice need be provided.

## **No Prior Request**

30.     No prior motion for the relief requested herein has been made to this or any other

court.

WHEREFORE, the Reorganized Debtors respectfully request that the Court grant the

relief requested herein and such other and further relief as it deems just and proper.

New York, New York
Dated:  June 6, 2013

/s/ Jonathan S. Henes
James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
Joshua A. Sussberg
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Attorneys for the Reorganized Debtors

K&E 26474569

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ION MEDIA NETWORKS, INC., *et al.*, | ) | Case No. 09-13125 (JMP) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |
| ION MEDIA NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-01440 (JMP) |
| | ) | |
| CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-01479 (JMP) |
| | ) | |
| ION MEDIA NETWORKS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER APPROVING REORGANIZED DEBTORS' MOTION
FOR ENTRY OF AN ORDER PURSUANT TO SECTION 363(b)
OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT
AGREEMENT WITH CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD**

Upon the motion (the "***Motion***")[1] of the above-captioned reorganized debtors

(collectively, the "***Reorganized Debtors***," and before the Effective Date, the "***Debtors***")[2] seeking

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

entry of an order (the "**Order**") approving the settlement agreement and release, dated June 6,

2013, by and between the Reorganized Debtors and Cyrus, attached hereto as **Exhibit 1** (and

attached to the Motion as **Exhibit B**) (the "***Settlement Agreement***"); and it appearing that the

relief requested is in the best interests of Reorganized Debtors' businesses, their creditors and

other parties in interest; the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the

---

2    The Debtors in these chapter 11 cases are:  ION Media Networks, Inc.; America 51, L.P.; ION Media Akron
     License, Inc.; ION Media Albany License, Inc.; ION Media Atlanta License, Inc.; ION Media Battle Creek
     License, Inc.; ION Media Boston License, Inc.; ION Media Brunswick License, Inc.; ION Media Buffalo
     License, Inc.; ION Media Charleston License, Inc.; ION Media Chicago License, Inc.; ION Media Dallas
     License, Inc.; ION Media Denver License, Inc.; ION Media Des Moines License, Inc.; ION Media
     Entertainment, Inc.; ION Media Greensboro License, Inc.; ION Media Greenville License, Inc.; ION Media
     Hartford License, Inc.; ION Media Hawaii License, Inc.; ION Media Hits, Inc.; ION Media Holdings, Inc.;
     ION Media Houston License, Inc.; ION Media Indianapolis License, Inc.; ION Media Jacksonville License,
     Inc.; ION Media Kansas City License, Inc.; ION Media Knoxville License, Inc.; ION Media Lexington License,
     Inc.; ION Media License Company, LLC; ION Media Los Angeles License, Inc.; ION Media LPTV, Inc.;
     ION Media Management Company.; ION Media Martinsburg License, Inc.; ION Media Memphis License, Inc.;
     ION Media Milwaukee License, Inc.; ION Media Minneapolis License, Inc.; ION Media New Orleans License,
     Inc.; ION Media of Akron, Inc.; ION Media of Albany, Inc.; ION Media of Atlanta, Inc.; ION Media of Battle
     Creek, Inc.; ION Media of Birmingham, Inc.; ION Media of Boston, Inc.; ION Media of Brunswick, Inc.; ION
     Media of Buffalo, Inc.; ION Media of Cedar Rapids, Inc.; ION Media of Charleston, Inc.; ION Media of
     Chicago, Inc.; ION Media of Dallas, Inc.; ION Media of Denver, Inc.; ION Media of Des Moines, Inc.;
     ION Media of Detroit, Inc.; ION Media of Fayetteville, Inc.; ION Media of Greensboro, Inc.; ION Media of
     Greenville, Inc.; ION Media of Hartford, Inc.; ION Media of Honolulu, Inc.; ION Media of Houston, Inc.; ION
     Media of Indianapolis, Inc.; ION Media of Jacksonville, Inc.; ION Media of Kansas City, Inc.; ION Media of
     Knoxville, Inc.; ION Media of Lexington, Inc.; ION Media of Los Angeles, Inc.; ION Media of Louisville, Inc.;
     ION Media of Martinsburg, Inc.; ION Media of Memphis, Inc.; ION Media of Miami, Inc.; ION Media of
     Milwaukee, Inc.; ION Media of Minneapolis, Inc.; ION Media of Nashville, Inc.; ION Media of New Orleans,
     Inc.; ION Media of New York, Inc.; ION Media of Norfolk, Inc.; ION Media of Oklahoma City, Inc.; ION
     Media of Orlando, Inc.; ION Media of Philadelphia, Inc.; ION Media of Phoenix, Inc.; ION Media of Portland,
     Inc.; ION Media of Providence, Inc.; ION Media of Raleigh, Inc.; ION Media of Roanoke, Inc.; ION Media of
     Sacramento, Inc.; ION Media of Salt Lake City, Inc.; ION Media of San Antonio, Inc.; ION Media of San Jose,
     Inc.; ION Media of Scranton, Inc.; ION Media of Seattle, Inc.; ION Media of Spokane, Inc.; ION Media of
     Syracuse, Inc.; ION Media of Tampa, Inc.; ION Media of Tulsa, Inc.; ION Media of Washington, Inc.; ION
     Media of Wausau, Inc.; ION Media of West Palm Beach, Inc.; ION Media Oklahoma City License, Inc.; ION
     Media Orlando License, Inc.; ION Media Philadelphia License, Inc.; ION Media Portland License, Inc.; ION
     Media Publishing, Inc.; ION Media Raleigh License, Inc.; ION Media Sacramento License, Inc.; ION Media
     Salt Lake City License, Inc.; ION Media San Antonio License, Inc.; ION Media San Jose License, Inc.; ION
     Media Scranton License, Inc.; ION Media Songs, Inc.; ION Media Spokane License, Inc.; ION Media Syracuse
     License, Inc.; ION Media Television, Inc.; ION Media Tulsa License, Inc.; ION Media Washington License,
     Inc.; ION Media Wausau License, Inc.; ION Media West Palm Beach Holdings, Inc.; ION Media West Palm
     Beach License, Inc.; ION Television Net, Inc.; Ocean State Television, L.L.C.; Open Mobile Ventures
     Corporation.

K&E 26474569

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED

1.      The Motion is granted to the extent provided herein.

2.      The Settlement Agreement, a copy of which is annexed hereto as **Exhibit 1**, is authorized and approved pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

3.      The Reorganized Debtors are authorized to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein.

4.      The terms of the Settlement Agreement shall be binding upon the Reorganized Debtors, all creditors of the Reorganized Debtors, any trustees appointed in these proceedings or any trustees appointed in any subsequent proceedings under chapter 7 or chapter 11 of the Bankruptcy Code relating to the Reorganized Debtors, and all other parties in interest.

5.      The Adversary Proceedings are dismissed with prejudice, with each party thereto bearing its own costs and expenses.

6.      Any persons or entities with rights or claims under the Security Agreement or Intercreditor Agreement — including without limitation: (a) the Reorganized Debtors; (b) Cyrus; (c) Wells Fargo; (d) NY Mellon Trust; (e) each member of the First Lien Group;[3] (f) Ashok Nayyar and Kevin Sisson; and (g) with respect to the entities in clauses (a) through (f), such

---

[3]     The First Lien Group included Avenue Capital Group, Black Diamond Capital Management, L.L.C., and Trilogy Capital.

K&E 26474569

entity's current and former agents, servants, officers, directors, shareholders, partners, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, and assigns — are each enjoined from commencing or continuing in any forum, any action or proceeding, or asserting any claims, objections or allegations, related to the Security Agreement, the Intercreditor Agreement, the Chapter 11 Proceedings, the Adversary Proceedings, the Confirmation Order or the FCC Licenses Lien.

7.       The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2013

_____
Honorable James M. Peck
United States Bankruptcy Judge

4

# **EXHIBIT B**

## **Settlement Agreement**

## SETTLEMENT AGREEMENT

Ion Media Networks, Inc. ("***Ion***") and Cyrus Select Opportunities Master Fund, Ltd. ("***Cyrus***," and together with Ion, the "***Parties***"), hereby enter into this agreement (this "***Agreement***") dated as of June 6, 2013.

### <u>Recitals</u>

**WHEREAS**, on December 30, 2005, Ion f/k/a Paxson Communications Corporation and certain of its affiliates issued $725 million in first priority secured debt (the "***First Priority Debt***"), and $405 million in second priority secured debt (the "***Second Priority Debt***," and together with the First Priority Debt, the "***Debt***");

**WHEREAS**, in connection with issuance of the Debt, Ion entered into that certain Pledge and Security Agreement dated as of December 30, 2005, by and among Ion and certain of its affiliates, Bank of New York Mellon Trust Company, N.A. as Indenture Trustee and Collateral Agent, and Citibank North America, Inc. as First Priority Administrative Agent (the "***Security Agreement***") pursuant to which, among other things, Ion and its affiliates pledged certain collateral in support of the Debt;

**WHEREAS**, Wells Fargo Bank, National Association is the Successor Administrative Agent under the Security Agreement and related term loan agreement;

**WHEREAS**, appended as Annex 1 to the Security Agreement were those certain Collateral Agent and Secured Party Acknowledgements (the "***Intercreditor Agreement***"), which, among other things, appointed a Collateral Agent for the Debt and set forth various intercreditor covenants regarding the relative priorities of collateral pledged under the Security Agreement;

**WHEREAS**, on May 19, 2009, Ion and certain of its affiliates (collectively the "***Debtors***") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (commencing, the "***Chapter 11 Proceedings***"), Case No. 09-13125 (JMP), in the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***");

**WHEREAS**, Cyrus was a holder of Second Priority Debt;

**WHEREAS**, over the course of the Chapter 11 Proceedings and in two related adversary proceedings, Adv. Proc. Nos. 09-1440 and 09-1479 (JMP) (collectively the "***Adversary Proceedings***"), the Debtors and holders of First Priority Debt presumed the validity of a purported lien granted by the Security Agreement in favor of the Debt holders on certain of the Debtors' FCC licenses and, to the extent not otherwise included, all Proceeds of those licenses (the "***FCC Licenses Lien***");

**WHEREAS**, Cyrus contested the validity of the FCC Licenses Lien throughout the Chapter 11 Proceedings and in the Adversary Proceedings;

**WHEREAS**, Ion and holders of the First Priority Debt asserted in the Chapter 11 Proceedings and in the Adversary Proceedings that Cyrus violated the terms of the Intercreditor Agreement by challenging the validity of the FCC Licenses Lien, and now assert that Cyrus is in continuing violation of the terms thereof;

**WHEREAS**, on August 19, 2009, the Debtors filed a *Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, which, among other things, presumed the validity of the FCC Licenses Lien;

**WHEREAS**, the Debtors subsequently filed four modified plans of reorganization which likewise presumed the validity of the FCC Licenses Lien;

**WHEREAS**, Cyrus objected to confirmation of the Debtors' plan of reorganization based on, among other things, the presumed validity of the FCC Licenses Lien;

**WHEREAS**, on December 3, 2009, the Bankruptcy Court issued an *Order Confirming the Debtors' Fourth Modified Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "***Confirmation Order***");

**WHEREAS**, on December 3, 2009, Cyrus noticed an appeal of the Confirmation Order to the United States District Court for the Southern District of New York;

**WHEREAS**, October 10, 2012, the United States District Court for the Southern District of New York issued a Memorandum and Order affirming the Confirmation Order (the "***SDNY Judgment***");

**WHEREAS**, on November 9, 2012, Cyrus noticed an appeal of the SDNY Judgment to the United States Court of Appeals for the Second Circuit (the "***Second Circuit Appeal***"), and whereas such appeal is currently pending;

**WHEREAS**, in order to avoid the uncertainty and inconvenience of litigation, subject to approval of the Bankruptcy Court, the Parties wish to consensually resolve their disputes by entering into the mutual releases set forth herein without any admission of liability or wrongdoing on the part of any Party;

**NOW, THEREFORE**, it is hereby agreed as follows:

1. **Discontinuance of Actions**.

   a. Within three (3) days of the date of the execution of this Agreement by both Parties hereto, Ion shall file a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 seeking the entry of an order in the form appended as Exhibit A hereto approving this Agreement, dismissing the Adversary Proceedings with prejudice, and entering a limited injunction restricting future litigations concerning the Debt, the FCC Licenses Lien, the Adversary Proceedings or the Second Circuit Appeal (the "***Adversary Proceedings Settlement***"). The Parties agree to engage in a reasonable, good faith effort to (a) seek Bankruptcy Court approval of the Adversary Proceedings Settlement; (b) seek entry of an order substantially in the

form appended as Exhibit A; (c) not make changes to the form of order appended as Exhibit A, or to consent to any changes, without the other Party's written consent; and (d) support this Agreement against any and all persons or entities seeking to prohibit entry of an order in the form appended as Exhibit A, or to avoid or limit the applicability or scope of this Agreement in any manner.  For the avoidance of confusion, nothing in this Section 1(a) shall obligate either Party to make any payment or provide any additional consideration to the other Party or any third party in connection obtaining consent for Bankruptcy Court approval of the Adversary Proceedings Settlement.

b.       Subject to Section 4 of this Agreement, no later than three (3) days after the date that an order approving the Adversary Proceedings Settlement becomes a final, non-appealable order, the Parties shall jointly file a voluntary stipulation of dismissal of the Second Circuit Appeal with prejudice and with each party thereto to bear its own costs and fees pursuant to Federal Rule of Appellate Procedure 42.

2.  **Releases**.

a.       Upon the Effective Date, Ion and each of its current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, and assigns (each of the foregoing, a "***Ion Release Party***") generally releases, discharges and acquits Cyrus, and each of its current and former agents, servants, officers, directors, shareholders, partners, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, and assigns (each of the foregoing, a "***Cyrus Release Party***") from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that any such Ion Release Party ever had or claimed to have or now has, against any Cyrus Release Party, including, without limitation, any claim relating to the Security Agreement, the Intercreditor Agreement, the Chapter 11 Proceedings, the Adversary Proceedings, the Confirmation Order or the FCC Licenses Lien.

b.       Upon the Effective Date, each of the Cyrus Release Parties generally releases, discharges and acquits each of the Ion Release Parties from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that any such Cyrus Release Party ever had or claimed to have or now has, against any Ion Release Party, including, without limitation, any claim relating to the Security Agreement, the Intercreditor Agreement, the Chapter 11 Proceedings, the Adversary Proceedings, the Confirmation Order or the FCC Licenses Lien.

3

3. **California Civil Code § 1542 Waiver**.  Although this Agreement shall not be governed by California law, the Parties understand that Section 1542 of the California Civil Code provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Party herein acknowledges that it is aware that it may hereafter discover facts different from or in addition to what it now knows or believes to be true with respect to the matters herein released, and it agrees that these releases shall be and remain in effect in all respects as complete general releases as to the matters released, notwithstanding any such different or additional facts. Each Party acknowledges that it has been informed of Section 1542 of the California Civil Code, and does hereby expressly waive and relinquish all rights and benefits, if any, which it has or may have under said Section and any similar or comparable federal, state or local law, whether set forth through statute or case law.  The Parties represent, warrant and agree that this waiver is a material term of this Agreement, without which the Parties would not have entered into this Agreement.

4. **Condition to Effectiveness**.

a.    With the exception of Section 1(a) hereto, this Agreement shall be without force and effect until the date that is two (2) business days after the Bankruptcy Court has entered an order approving the Adversary Proceedings Settlement (the "***Effective Date***") in a form consistent with Section 4(b) of this Agreement.

b.    This Agreement shall be null and void and the Effective Date shall not occur unless (i) the Bankruptcy Court enters the Adversary Proceedings Settlement substantially in the form appended as Exhibit A hereto or (ii) the Bankruptcy Court enters the Adversary Proceedings Settlement in a form that each Party hereto has consented to, in writing.

5. **No Admission of Liability**.  This Agreement does not constitute an admission of any kind on the part of any Party that any of them has violated any agreement, law, statute, regulation or has otherwise committed any wrongful act of any kind whatsoever, and each Party specifically denies having done so.  Neither this Agreement nor the furnishing of consideration hereunder shall be deemed or construed for any purposes as evidence of, or an admission of, liability or wrongful conduct of any kind.

6. **Choice of Law**.  This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York.

7. **Miscellaneous**.

a.    This Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This

Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by all Parties.

        b.      Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

        c.      This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same Agreement.

        d.      This Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

        e.      Each Party shall bear its own costs and expenses in connection with the negotiation and execution of this Agreement and the preceding litigations, the Chapter 11 Proceedings and the Adversary Proceedings.

[SIGNATURE PAGE FOLLOWS]

5

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**ION MEDIA NETWORKS, INC.**

By:
Title:    Brandon Burgess
          Chairman and Chief Executive Officer

**CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD.**

By:       David A Milich
Title:    COO

## EXHIBIT C

**Final Decree Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ION MEDIA NETWORKS, INC., *et al*., | ) | Case No. 09-13125 (JMP) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

---

### ORDER GRANTING FINAL DECREE CLOSING THE CHAPTER 11 CASES

Upon the motion (the "***Motion***")[1] of ION Media Networks, Inc. and its reorganized debtor affiliates (the "***Reorganized Debtors***") for a final decree closing each of their 117 Chapter 11 Cases; the Bankruptcy Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper in this District and before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409; service and notice of the Motion having been adequate and appropriate under the circumstances and no other or further notice is required; and a hearing having been held on the Motion on December 21, 2010; and after due deliberation and sufficient cause appearing therefor

THE COURT FINDS that:

1.      The Plan does not require any deposits.

2.      The property required to be transferred by the Plan in respect of the Fully Administered Cases has been transferred.

3.      Each of the Reorganized Debtors for the Fully Administered Cases has assumed the business and the management of the property dealt with by the Plan.

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4.    Payments required under the Plan in respect of the Fully Administered Cases have commenced.

5.    All claims, motions, contested matters and adversary proceedings pending during the Fully Administered Cases have been resolved, except for the Cyrus Appeal and the two adversary proceedings relating to Cyrus Select Opportunities Master Fund, Ltd., numbered 09-01440 (JMP) and 09-01479 (JMP) (the "***Adversary Proceedings***").

6.    The Fully Administered Cases have been fully administered and substantially consummated.

7.    All statutory fees of the Fully Administered Cases have been paid or will be paid within twenty (20) days of the entry of this Order.

THE COURT THEREFORE ORDERS, ADJUDGES, AND DECREES that:

8.    The Motion is granted as provided herein.

9.    Pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, the Bankruptcy Court hereby enters this Final Decree and orders the 117 cases identified on **Appendix 1**, annexed hereto, closed pursuant to the terms of this Order.

10.    Upon the filing of a notice with the Court by either Cyrus or the Reorganized Debtors no later than sixty (60) days after the conclusion of the Cyrus Appeal (including any subsequent appeals) (the "***Notice to Reopen***"), the Chapter 11 Cases shall be reopened, and "cause" as used in section 350(b) of the Bankruptcy Code shall be deemed to exist.

11.    Entry of this final decree is without prejudice to the rights of the Reorganized Debtors or any other party in interest to seek to reopen these cases for good cause shown pursuant to section 350(b) of the Bankruptcy Code.

12.    The Bankruptcy Court shall retain jurisdiction to enforce or interpret its own

2

orders pertaining to the Chapter 11 Cases.  Furthermore, the Bankruptcy Court shall retain jurisdiction over any matter pending in the Chapter 11 Cases, including the Adversary Proceedings.  The Adversary Proceedings shall be closed pending a Notice to Reopen and resolution of the Cyrus Appeal without prejudice to any party's rights, and all applicable statutes of limitations or repose shall be tolled pending the filing of the Notice to Reopen.

13.    The findings in this Order (i) are not intended to divest or infringe upon any court's jurisdiction to determine any issues in the Cyrus Appeal and (ii) shall not be used by any party for any purpose other than the Motion.

14.    The Closing Report of the Reorganized Debtors is approved.

15.    For the purposes of calculating quarterly fees payable to the Office of the United States Trustee for the Southern District of New York pursuant to 28 U.S.C. § 1930(a)(6), all disbursements made by the 117 Reorganized Debtors identified in **Appendix 1** up to the date of entry of this Order will be included in the calculation, and the Reorganized Debtors shall pay these amounts within twenty (20) days of the entry of this Order.  No disbursements made by any of the 117 Reorganized Debtors identified in **Appendix 1** after the date of entry of this Order will be included in subsequent calculations, and no minimum quarterly fees shall be payable in respect of the Fully Administered Cases for periods after entry of the Final Decree.

16.    The Reorganized Debtors are authorized to take all actions necessary to effectuate this Order.

17.    Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.


Dated: New York, New York
      December 22, 2010

                                *s/ James M. Peck*
                               Honorable James M. Peck
                               United States Bankruptcy Judge

09-01479-rmp   Doc 19   Filed 06/28/13   Entered 06/28/13 11:31:34   Main Document
Pg 37 of 50

# Appendix 1

## Fully Administered Chapter 11 Cases

**Fully Administered Chapter 11 Cases To Be Closed Effective December 21, 2010**

| Debtor Name and<br>Last Four Digits of Taxpayer ID No. | Case No. |
|---|---|
| America 51, L.P. (9042) | 09-13126 |
| ION Media Akron License, Inc. (1729) | 09-13127 |
| ION Media Albany License, Inc. (6665) | 09-13128 |
| ION Media Atlanta License, Inc. (1854) | 09-13131 |
| ION Media Battle Creek License, Inc. (9770) | 09-13134 |
| ION Media Boston License, Inc. (4667) | 09-13137 |
| ION Media Brunswick License, Inc. (4850) | 09-13140 |
| ION Media Buffalo License, Inc. (4425) | 09-13142 |
| ION Media Charleston License, Inc. (0849) | 09-13144 |
| ION Media Chicago License, Inc. (8673) | 09-13147 |
| ION Media Dallas License, Inc. (3743) | 09-13149 |
| ION Media Denver License, Inc. (5191) | 09-13151 |
| ION Media Des Moines License, Inc. (3637) | 09-13153 |
| ION Media Entertainment, Inc. (0490) | 09-13155 |
| ION Media Greensboro License, Inc. (3901) | 09-13156 |
| ION Media Greenville License, Inc. (3243) | 09-13160 |
| ION Media Hartford License, Inc. (2807) | 09-13163 |
| ION Media Hawaii License, Inc. (4523) | 09-13165 |
| ION Media Hits, Inc. (2159) | 09-13167 |
| ION Media Holdings, Inc. (7378) | 09-13168 |
| ION Media Houston License, Inc. (1475) | 09-13170 |
| ION Media Indianapolis License, Inc. (6576) | 09-13174 |
| ION Media Jacksonville License, Inc. (3781) | 09-13177 |
| ION Media Kansas City License, Inc. (2711) | 09-13180 |
| ION Media Knoxville License, Inc. (9210) | 09-13182 |
| ION Media Lexington License, Inc. (6033) | 09-13185 |
| ION Media License Company, LLC (8700) | 09-13188 |
| ION Media Los Angeles License, Inc. (5992) | 09-13191 |
| ION Media LPTV, Inc. (1981) | 09-13193 |
| ION Media Management Company (2233) | 09-13196 |
| ION Media Martinsburg License, Inc. (9782) | 09-13199 |
| ION Media Memphis License, Inc. (0900) | 09-13201 |
| ION Media Milwaukee License, Inc. (7050) | 09-13205 |
| ION Media Minneapolis License, Inc. (5988) | 09-13208 |
| ION Media Networks, Inc. (2788) | 09-13125 |
| ION Media New Orleans License, Inc. (0929) | 09-13210 |
| ION Media of Akron, Inc. (1718) | 09-13214 |
| ION Media of Albany, Inc. (8627) | 09-13216 |
| ION Media of Atlanta, Inc. (5962) | 09-13220 |
| ION Media of Battle Creek, Inc. (3604) | 09-13223 |
| ION Media of Birmingham, Inc. (8713) | 09-13226 |
| ION Media of Boston, Inc. (8840) | 09-13229 |
| ION Media of Brunswick, Inc. (4849) | 09-13231 |
| ION Media of Buffalo, Inc. (4433) | 09-13233 |
| ION Media of Cedar Rapids, Inc. (4431) | 09-13235 |

**Fully Administered Chapter 11 Cases To Be Closed Effective December 21, 2010 (cont'd)**

| Debtor Name and<br>Last Four Digits of Taxpayer ID No. | Case No. |
|---|---|
| ION Media of Charleston, Inc. (0847) | 09-13237 |
| ION Media of Chicago, Inc. (6274) | 09-13239 |
| ION Media of Dallas, Inc. (3742) | 09-13241 |
| ION Media of Denver, Inc. (3895) | 09-13240 |
| ION Media of Des Moines, Inc. (3632) | 09-13242 |
| ION Media of Detroit, Inc. (5187) | 09-13227 |
| ION Media of Fayetteville, Inc. (1647) | 09-13228 |
| ION Media of Greensboro, Inc. (3894) | 09-13230 |
| ION Media of Greenville, Inc. (3242) | 09-13232 |
| ION Media of Hartford, Inc. (2805) | 09-13234 |
| ION Media of Honolulu, Inc. (4528) | 09-13236 |
| ION Media of Houston, Inc. (1679) | 09-13238 |
| ION Media of Indianapolis, Inc. (6575) | 09-13129 |
| ION Media of Jacksonville, Inc. (2580) | 09-13130 |
| ION Media of Kansas City, Inc. (2686) | 09-13132 |
| ION Media of Knoxville, Inc. (4455) | 09-13133 |
| ION Media of Lexington, Inc. (6029) | 09-13135 |
| ION Media of Los Angeles, Inc. (5991) | 09-13136 |
| ION Media of Louisville, Inc. (7351) | 09-13138 |
| ION Media of Martinsburg, Inc. (9860) | 09-13139 |
| ION Media of Memphis, Inc. (4519) | 09-13141 |
| ION Media of Miami, Inc. (1066) | 09-13143 |
| ION Media of Milwaukee, Inc. (6378) | 09-13145 |
| ION Media of Minneapolis, Inc. (5983) | 09-13146 |
| ION Media of Nashville, Inc. (4429) | 09-13148 |
| ION Media of New Orleans, Inc. (4451) | 09-13150 |
| ION Media of New York, Inc. (2309) | 09-13124 |
| ION Media of Norfolk, Inc. (4356) | 09-13152 |
| ION Media of Oklahoma City, Inc. (2182) | 09-13154 |
| ION Media of Orlando, Inc. (7996) | 09-13157 |
| ION Media of Philadelphia, Inc. (3731) | 09-13158 |
| ION Media of Phoenix, Inc. (6052) | 09-13159 |
| ION Media of Portland, Inc. (6031) | 09-13161 |
| ION Media of Providence, Inc. (3775) | 09-13162 |
| ION Media of Raleigh, Inc. (3737) | 09-13164 |
| ION Media of Roanoke, Inc. (1687) | 09-13166 |
| ION Media of Sacramento, Inc. (5880) | 09-13169 |
| ION Media of Salt Lake City, Inc. (7339) | 09-13171 |
| ION Media of San Antonio, Inc. (6035) | 09-13173 |
| ION Media of San Jose, Inc. (3735) | 09-13175 |
| ION Media of Scranton, Inc. (5747) | 09-13176 |
| ION Media of Seattle, Inc. (6130) | 09-13178 |
| ION Media of Spokane, Inc. (5799) | 09-13179 |
| ION Media of Syracuse, Inc. (5912) | 09-13181 |

**Fully Administered Chapter 11 Cases To Be Closed Effective December 21, 2010 (cont'd)**

| Debtor Name and<br>Last Four Digits of Taxpayer ID No. | Case No. |
|---|---|
| ION Media of Tampa, Inc. (7558) | 09-13183 |
| ION Media of Tulsa, Inc. (3898) | 09-13184 |
| ION Media of Washington, Inc. (5951) | 09-13186 |
| ION Media of Wausau, Inc. (1709) | 09-13187 |
| ION Media of West Palm Beach, Inc. (3013) | 09-13189 |
| ION Media Oklahoma City License, Inc. (1346) | 09-13190 |
| ION Media Orlando License, Inc. (6278) | 09-13192 |
| ION Media Philadelphia License, Inc. (3730) | 09-13194 |
| ION Media Portland License, Inc. (6037) | 09-13195 |
| ION Media Publishing, Inc. (7299) | 09-13197 |
| ION Media Raleigh License, Inc. (9780) | 09-13198 |
| ION Media Sacramento License, Inc. (5878) | 09-13200 |
| ION Media Salt Lake City License, Inc. (8582) | 09-13202 |
| ION Media San Antonio License, Inc. (6981) | 09-13203 |
| ION Media San Jose License, Inc. (3733) | 09-13204 |
| ION Media Scranton License, Inc. (5746) | 09-13206 |
| ION Media Songs, Inc. (7301) | 09-13207 |
| ION Media Spokane License, Inc. (5800) | 09-13209 |
| ION Media Syracuse License, Inc. (5915) | 09-13211 |
| ION Media Television, Inc. (3729) | 09-13212 |
| ION Media Tulsa License, Inc. (9209) | 09-13215 |
| ION Media Washington License, Inc. (9719) | 09-13213 |
| ION Media Wausau License, Inc. (4744) | 09-13218 |
| ION Media West Palm Beach Holdings, Inc. (6411) | 09-13219 |
| ION Media West Palm Beach License, Inc. (7913) | 09-13221 |
| ION Television Net, Inc. (9886) | 09-13222 |
| Ocean State Television, LLC (0171) | 09-13224 |
| Open Mobile Ventures Corporation (4660) | 09-13225 |

**Exhibit B**

**Closing Report**

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ION MEDIA NETWORKS, INC., *et al*., | ) | Case No. 09-13125 (JMP) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

---

### CLOSING REPORT FOR THE CHAPTER 11 CASES

To the best of my knowledge and belief, the following is a breakdown in these chapter 11 cases:[1]

$3,276,609.60          FEES AND EXPENSES FOR ATTORNEYS FOR DEBTORS

$9,507,288.91[2]         OTHER PROFESSIONAL FEES AND ALL EXPENSES

_____

_____N/A_____        TRUSTEE FEE (if applicable)

_____N/A_____        FEE FOR ATTORNEY FOR TRUSTEE (if applicable)

_____

_____N/A_____        % DIVIDEND PAID / TO BE PAID

_____N/A_____        FUTURE DIVIDENDS

                     (check if % of future dividend under plan not yet determinable)

_____

---

[1]   Capitalized terms used but not defined herein shall have the meaning set forth in the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code  [Docket Nos. 221, 287 and 387].  This Closing Report is applicable to the Chapter 11 Cases identified in **Appendix 1**.

[2]   For a breakdown of all fees and expenses paid to professionals in all of the Chapter 11 Cases, see **Schedule 1** attached hereto.

STEPS TAKEN TO CONSUMMATE PLAN:

_____Yes_____                    Initial distribution under the plan completed

_____See Schedule 2_____

New York, New York                         /s/ Jonathan S. Henes
Dated: December 21, 2010                   James H.M. Sprayregen, P.C.
                                           Jonathan S. Henes
                                           Joshua A. Sussberg
                                           KIRKLAND & ELLIS LLP
                                           601 Lexington Avenue
                                           New York, New York  10022
                                           Telephone:     (212) 446-4800
                                           Facsimile:     (212) 446-4900

                                           Attorneys for the Reorganized Debtors

## Schedule 1

**Professional Fees and Expenses**

**PROFESSIONAL FEES AND EXPENSES: MAY 19, 2009 THROUGH DECEMBER 3, 2009**

| PROFESSIONAL | FEES | EXPENSES |
|---|---|---|
| Chanin Capital Partners | $946,451.63 | $7,277.61 |
| Ernst & Young LLP | $722,189.10 | $6,690.70 |
| Holland & Knight LLP | $785,740.00 | $26,685.26 |
| Kirkland & Ellis LLP | $3,123,495.50 | $153,114.10 |
| KPMG LLP | $352,342.00 | $10,626.00 |
| Lowenstein Sandler PC | $1,146,561.50 | $43,283.84 |
| Moelis and Company LLC | $5,400,806.45 | $58,634.82 |

**Schedule 2**

**Distributions Made Pursuant to the Plan**

## DISTRIBUTIONS MADE PURSUANT TO THE PLAN

On or after the Effective Date, the following distributions were made to, or provided for, the various classes of Allowed Claims pursuant to the Plan[1] and the Confirmation Order.

| Class | Treatment |
| --- | --- |
| Class 1: Other Secured Claims | Holders of Allowed Claims in Class 1 for each of the Debtors, in full and final satisfaction of their Claims secured by valid Liens on the Debtors' property, received one of the following treatments at the option of the applicable Debtor:<br>• payment of the Allowed Class 1 Claim in full in Cash on the later of the Distribution Date or as soon as practicable after a particular Claim became Allowed;<br>• such other treatment as may have been agreed to by the applicable Debtor and the Holder; or<br>• the Holder retained its Lien on such property and be reinstated pursuant to section 1129 of the Bankruptcy Code. |
| Class 2: DIP Facility Claims | Subject to the terms of the DIP Credit Agreement, and notwithstanding Schedule 2.05 thereto, Holders of DIP Facility Claims received on or as soon as practicable after the Effective Date (subject to the following proviso), in full and final satisfaction of the DIP Facility Claims, their Pro Rata share of the Conversion Equity, subject to dilution on account of the Equity Incentive Program and the Warrants; *provided*, *that*, to the extent that any Holder of DIP Facility Claims did not deliver an Ownership Certification to the Debtors and otherwise comply with the Communications Act and FCC implementing rules on, or within 10 days of, the Effective Date, such Holder received Special Warrants to purchase an equivalent number of shares of New Common Stock; and *provided*, *further*, *that* if the Effective Date occurred upon an FCC Approval pursuant to clause (2) of such definition of FCC Approval, such Holders received their Pro Rata share of 62.5% of the beneficial interests of the FCC Trust in lieu of any New Common Stock they would have otherwise been entitled to receive pursuant to this provision (subject to receipt of Special Warrants as to any Holder to the extent such Holder did not timely deliver an Ownership Certification and otherwise comply with the |

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

| Class | Treatment |
|---|---|
|  | Communications Act and FCC implementing rules both (i) in connection with the distribution of beneficial interests in the FCC Trust and (ii) upon distribution of the New Common Stock out of the FCC Trust to holders of beneficial interests). |
| Class 3:  First Lien Debt Claims | Holders of First Lien Debt Claims received, on or as soon as practicable after the Effective Date (subject to the following proviso), in full and final satisfaction of their First Lien Debt Claims, their Pro Rata share of 37.5% of the New Common Stock issued on the Effective Date, subject to dilution on account of the Equity Incentive Program and the Warrants; *provided, that,* to the extent that any Holder of First Lien Debt Claims did not timely deliver an Ownership Certification to the Debtors and otherwise comply with the Communications Act and FCC implementing rules on, or within 10 days of, the Effective Date, such Holder received Special Warrants to purchase an equivalent number of shares of New Common Stock; and *provided, further,* that if the Effective Date occurred upon an FCC Approval pursuant to clause (2) of the definition of FCC Approval, such Holders received their Pro Rata share of 37.5% of the beneficial interests of the FCC Trust in lieu of any New Common Stock they would have otherwise been entitled to receive pursuant to this provision (subject to receipt of Special Warrants as to any Holder to the extent such Holder did not timely deliver an Ownership Certification and otherwise comply with the Communications Act and FCC implementing rules both (i) in connection with the distribution of beneficial interests in the FCC Trust and (ii) upon distribution of the New Common Stock out of the FCC Trust to holders of beneficial interests). |
| Class 4:  Second Priority Notes Claims | Holders of Second Priority Notes Claims received, on or as soon as practicable after the Effective Date, in full and final satisfaction of the Second Priority Notes Claims, their (i) Pro Rata share of the Second Lien Warrants and (ii) a Pro Rata share of a $5 million aggregate cash distribution shared with the Holders of General Unsecured Claims.  In addition, the terms of the Second Lien Warrants included a three-year call option beginning upon Consummation (the "*Liquidity Call Option*") entitling each Holder of Second Lien Warrants to purchase its Pro Rata share of 5% of the fully diluted common equity of Reorganized ION (subject to customary weighted average anti-dilution adjustment but excluding such dilution protection for the issuance of the Unsecured Debt Warrants) upon and in connection with a merger, sale of substantially all of the assets or economic change of control of Reorganized ION (collectively, a "*Liquidity Event*") if the valuation |

2

| Class | Treatment |
|---|---|
| | of Reorganized ION implied by the purchase price paid in the Liquidity Event on an equity value basis (the "*Liquidity Event Equity Valuation*") is less than $800 million.  The Liquidity Call Option price ("*Call Option Price*") for each share of common equity was equal to 95% of the per share Liquidity Event Equity Valuation; *provided that* the difference between the aggregate Call Option Price for shares of common equity of Reorganized ION and the aggregate Liquidity Event Equity Valuation of the shares of common equity of Reorganized ION subject to the Liquidity Call Option (the "*Spread*") did not exceed the Black Scholes value of the Second Lien Warrants and the aggregate Call Option Price for shares of common equity of Reorganized ION shall be increased to the extent which the Spread exceeds the Black Scholes value of the Second Lien Warrants; *provided, further* that if the Liquidity Event occurs within three years of Consummation but before Transfer of Control has been approved by the FCC, then in lieu of any equity in Reorganized ION,  each Holder of Second Lien Warrants shall be entitled to exercise a right (the "*Cashout Right*") to  receive its Pro Rata share of Cash in an amount equal to the Spread, which amount shall in no event exceed the Black Scholes value of the Second Lien Warrants. Upon any exercise of the Liquidity Call Option, the applicable Second Lien Warrants shall be extinguished. |
| Class 5:  General Unsecured Claims | Holders of Allowed General Unsecured Claims received, on or as soon as practicable after the Effective Date, in full and final satisfaction of the General Unsecured Claims, their (i) Pro Rata share of the Unsecured Debt Warrants and (ii) a Pro Rata share of a $5 million aggregate cash distribution to be shared, with the Holders of Second Priority Notes Claims; *provided, however*, that any such distribution made pursuant to (i) and (ii) of this section was subject to the terms of the Senior Subordinated Notes Indenture, including, without limitation, Article 12.  In addition, the terms of the Unsecured Debt Warrants include a three-year Liquidity Call Option beginning upon Consummation which will entitle  each Holder of Unsecured Debt Warrants to purchase its Pro Rata share of 5% of the fully diluted common equity of Reorganized ION (subject to customary weighted average anti-dilution adjustment but excluding such dilution protection for the issuance of the Second Lien Warrants) upon and in connection with a Liquidity Event if the Liquidity Event Equity Valuation is less than $1.1 billion.  The Call Option Price for each share of common equity will be equal to 95% of the per share Liquidity Event Equity Valuation; *provided that* the Spread shall not exceed the Black Scholes value of the Unsecured Debt Warrants and the |

| Class | Treatment |
|---|---|
|  | aggregate Call Option Price for shares of common equity of Reorganized ION shall be increased to the extent which the Spread exceeds the Black Scholes value of the Second Lien Warrants; *provided, further* that if the Liquidity Event occurs within three years of Consummation but before Transfer of Control has been approved by the FCC, then in lieu of any equity in Reorganized ION, each  Holder of Unsecured Debt Warrants shall be entitled to exercise a Cashout Right to receive its Pro Rata share of Cash in an amount equal to the Spread, which amount shall in no event exceed the Black Scholes value of the Unsecured Debt Warrants. Upon any exercise of the Liquidity Call Option, the applicable Unsecured Debt Warrants shall be extinguished. |
| Class 6:  Second Lien Notes Guaranty Claims | Holders of Second Priority Notes Guaranty Claims received no distribution on account of such Claims, and Second Priority Notes Guaranty Claims were discharged, cancelled, released and extinguished as of the Effective Date. |
| Class 7:  Intercompany Interests | Intercompany Interests were retained and the legal, equitable and contractual rights to which Holders of such Allowed Intercompany Interests are entitled remained remain unaltered. |
| Class 8:  Section 510(b) Claims | Holders of Section 510(b) Claims did not receive any distribution on account of such Claims, and Section 510(b) Claims were discharged, cancelled, released and extinguished as of the Effective Date. |
| Class 9:  ION Equity Interests | Holders of ION Equity Interests received no distribution on account of such Claims, and all ION Equity Interests were discharged, cancelled, released, and extinguished as of the Effective Date. |